### Rudy et al. v. Ellis et al.

January 30, 1951.

Sidney B. Neal, Judge.

Thacker & Sweeney, Hubert Meredith and Thomas E. Sandidge for appellants.

E. B. Anderson and David C. Brodie for appellees.

JUDGE HELM—Reversing in part, affirming in part.

George H. Rudy, by the seventh clause of his will, devised a 335-acre farm in Daviess County as follows: "I devise and bequeath to my said son during the whole of his natural life with remainder in fee in equal shares to his lawful issue surviving him the following real estate, in Daviess County, Kentucky: (1) 335 acres known as the Elza Edwards farm. * * * But if my said son shall die without issue surviving him the lands mentioned in the seventh paragraph hereof I devise and bequeath to my said wife and to my said daughter and to the survivor of them in equal shares for and during their respective natural lives with remainder in fee in equal portions to the lawful issue of my said daughter surviving her, but if she shall die without issue surviving

her then the lands mentioned in this the seventh paragraph hereof I devise and bequeath in fee to my heirs at law, they to take per stirpes.''

After his death on September 23, 1946, James H. Rudy and the other adults named executed an oil and gas lease covering this farm to Rita Damron. James H. Rudy, having been, at the suggestion of Mr. Anderson, appointed guardian for his infant children, he, individually and as guardian, and the other adults executed an oil and gas lease dated September 23, 1946, but actually executed and acknowldeged on December 5, 1946, for this tract to the D. G. & S. Oil Company and James C. Ellis. The first lease was marked and treated as void. The Oil Company is a partnership composed of Wallace Damron, husband of Rita Damron, W. E. Gary and L. N. Savage.

On August 16, 1947, the lessees began operations on the tract, drilling two gas wells and an oil well. About February 1, 1948 an attorney for the vendee of the gas from the wells discovered that the lessees, appellees here, apparently had an invalid lease because they had not complied with KRS 353.300 in obtaining the lease. The vendee so advised appellees and began impounding the monies they owed for the oil and gas as it came from the wells.

On February 28, 1948, appellees filed this action asking that a trustee be appointed in accordance with KRS 353.300, and that the lease of December 5, 1946 be confirmed. The court appointed Katherine Rudy trustee for the infant devisees under the will, declined to approve the lease of December 5, 1946 to appellees, but authorized and directed the trustee to make a private sale of the oil and gas lease.

On October 7, 1948, Katherine Rudy, as trustee, tendered to the court an oil and gas lease for the tract to the Ryan Oil Company, providing, in addition to the usual provisions, a consideration of $50 an acre, or $16,750, and asked for approval of the court. By order of October 18, 1948, Mrs. Rudy was directed to deliver the lease to the lessee, Ryan Oil Company.

Appellee James C. Ellis and the partners in the D. G. & S. Oil Company filed intervening petitions setting up their objections to the sale of the lease by Mrs.

Rudy, trustee, to the Ryan Oil Company, setting out their lease of December 5, 1946, pleading that under this lease they had entered upon the tract innocently and in good faith, saying that as bona fide occupants of the leasehold they began on August 16, 1947, exploration of the property for oil and gas purposes and drilled three wells on the property between August 16, 1947 and December 11, 1947, one a small oil well, and two commercial producers of natural gas; that they equipped the wells with casing and connected them with pipe lines in order that the oil and gas produced might be marketed. They alleged an expenditure of $23,434.02 in the exploration, drilling and production of oil and gas on the property.

They prayed that approval of the Ryan Oil Company lease be withheld; that Mrs. Rudy, as trustee, be directed to join in the execution of the lease of December 5, 1946 to appellees; that the court then approve the lease in accordance with KRS Chapter 353; that appellees be adjudged 7/8th of all the gross proceeds of the oil and gas produced; that the enhanced vendible value of the property be determined to be the sum of $23,434.02, and that appellees be adjudged a lien for that amount.

Appellees filed answer and cross-petition making C. R. Ozier, successor to the Ryan Oil Company, a party. Mrs. Rudy, as trustee, renewed her motion for approval of the Ryan Oil Company lease and filed amended answer, counterclaim and cross-petition, alleging that she was entitled to recover as trustee "all sums of money owing by the pipe line companies for all gas and oil which had been produced" and which may be produced from the leased tract. Appropriate pleadings made up the issues.

The court heard proof "without the intervention of a jury," and adjudged that appellees "entered * * * peaceably and in good faith * * * to explore and discover oil and gas, * * *"; that the value of oil pumped from the oil well amounted to $534.57; the value of the gas from the two gas wells amounted to $22,925.10 as of March 25, 1949; that appellees had expended the sum of $20,997.37 in drilling and equipping the three wells; that appellees did not receive any knowledge or information as to any defect in their title as lessees until January 31, 1948; that the lessors by the lease of December

5, 1946 did not have the legal right and authority to make a valid lease for the 335-acre tract; that appellees receive, as owners, 7/8ths of the proceeds from the sale of oil and gas to January 31, 1948, amounting to $6,026.94; that they receive 7/8th of the proceeds from the sale of oil and gas from January 31, 1948 to March 25, 1949, amounting to $14,520.27, to apply on their total expenditures of $21,078.40 in developing the tract, including $81.10 for operating the wells, and that they receive an additional $6,558.20 out of "future runs" of oil or gas.

The court adjudged that the motion of Mrs. Rudy, trustee, for approval of the Ryan Oil Company lease should be and is overruled, and directed that she, as trustee, "make sale of the lease for oil and gas" of the tract at a private sale, setting out in detail the conditions of the lease to be executed by her; that the total amount due Ellis and associates to March 25, 1949 was $20,977.37, and $81.10 for operating the wells, a total of $21,078.47. Ellis and associates were given a judgment for an additional $6,558.20. After that payment, it was adjudged that all of the oil and gas runs should belong to the devisees of George H. Rudy, subject to the rights of the lessee under any future lease to be executed by the trustee and approved by the court.

Katherine Rudy, trustee, the adult lessors under the original will; James Rudy, guardian, and C. R. Ozier, assignee of the Ryan Oil Company lease, appeal.

The questions here are: (1) Were appellees innocent or wilful trespassers; (2) what was the measure of damages; and (3) should the offer of C. R. Ozier, assignee of the Ryan Oil Company, have been approved by the court?

Appellees, in their brief, say: "The guardian's lease was invalid because KRS 353.300 requires a lease of this land devised under the Rudy will to be executed by a trustee for all the devisees rather than by a guardian of the James H. Rudy children *in esse*." In Summers Oil and Gas, Vol. 1, sec. 23, it is said:

"One who takes oil and gas from the land of another wrongfully is presumed to be a wilful trespasser and suffers in damages as such. This presumption, however, is rebuttable, and may be overcome by evidence

showing that the defendant acted in good faith, honestly believing his acts complained of were privileged.

"The test to determine whether one was a wilful or an innocent trespasser is, not his violation of the law in the light of the maxim that every man knows the law, but his honest belief and his actual intention at the time he committed the trespass: * * *."

It is suggested in appellants' brief that appellees should have examined the title and should have known the law, and that the attorney who advised the appointment of a guardian should have known the law. But in this state we have held that the rule of actual, not constructive, notice applies. A wilful trespasser is one who knows he is wrong; an innocent trespasser is one who believes he is right. Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S. W. 2d 1037. Ellis and his associates, Damron, Gary, Savage and Morrison, say they had no knowledge of any defect in the title until notified about February 1, 1948. From all the record and testimony, it is apparent that appellees, under the above rule, were innocent trespassers.

James Rudy and the other adult lessors are only life tenants. The fee in the 335-acre farm is in infants, some in being and some possibly unborn. KRS, Chapter 353, was enacted to protect such owners by requiring the appointment of a trustee to protect their rights. Here the life tenants are only entitled to income, while the infants are entitled to have the corpus of their property protected and preserved for them.

With the above facts in mind, we will consider the measure of damages applicable here. In Mills and Willingham, Law of Oil and Gas, sec. 22, page 32, it is said: "The general rule, covering the measure of damages for the unlawful appropriation of oil and gas, is that an innocent trespasser is liable for the value of the oil or gas at the surface, less the amount reasonably expended in producing it; but a wilful trespasser is liable for the full value without any credit for the cost of production."

In United States v. Wyoming, 331 U. S. 440, 67 S. Ct. 1319, 1328, 91 L. Ed. 1590, Chief Justice Vinson said: "* * * one who 'wilfully' or 'in bad faith' trespasses on the land of another, and removes minerals, is liable to the owner for their full value computed as of the

time the trespasser converted them to his own use, by sale or otherwise, but * * * an 'innocent' trespasser, who has acted 'in good faith,' may deduct from such value the expenses of extraction. * * *''

In Summers Oil and Gas, Vol. 1, sec. 24, it is said: ''* * * In the taking of oil and gas, the severance and improvement are accomplished by the same physical act. On principle, the measure of damages must be the value of the oil and gas as they existed in the earth. But the value of these substances, *in situ,* because of their peculiar nature and the uncertainty and difficulty of their production, is hard to prove. The courts have therefore resorted to an easier method of proof; that is, the value of the oil or gas less reasonable cost of production. * * *''

In Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S. W. 2d 1037, 1039, an oil and gas case, we said:

''* * * those who invade the property of another inadvertently or under a bona fide belief or claim of right and extract of minerals are allowed credit por proper expenditures in obtaining or producing them. While not allowed any profits, they are not to be penalized. * * *

''The measure of damage in respect to oil leases where the trespass or appropriation was in good faith is by the weight of authority declared to be the value of the oil at the mouth of the well, less the amount reasonably expended in producing it. * * *''

Under the facts and circumstances of this case, we believe this rule should be applied here.

The trespassers, appellees here, are only entitled to their reasonable expenditures as determined in the Circuit Court. It appears from the record that the monies impounded by the pipe line companies were sufficient to pay these expenditures.

From the record we are not able to say the court erred in declining to approve the Ryan Oil Company issue, assigned to Ozler. KRS Chapter 353, provides in detail for the leasing of oil and gas rights in cases such as this. The provisions of that chapter should be carefully followed in order to protect the contingent future interests of those involved.

 

The judgment is reversed in part and affirmed in part, with directions for entry of a judgment in accordance with this opinion.