**ELLIS et al. v. RUDY et al.**

Court of Appeals of Kentucky.
Dec. 12, 1952.

KRS 353.300 reads as follows: "Where lands, or any estate or interest therein, are subject to any contingent future interest, legal or equitable, by way of remainder, reversion, or possibility of reverter, upon the happening of a condition subsequent, or otherwise, created by deed, will, or otherwise, and whether a trust is involved or not, and it is made to appear that it will be advantageous to the present and ultimate owners of said lands or estate or interest therein, the court shall have the power, pending the happening of any contingency and the vesting of such future interest or interests, to declare a trust in said lands or estate or interest therein, appoint a trustee therefor, and to authorize such trustee to sell, execute and deliver a valid oil, gas, coal or other mineral lease covering said lands or estate or interest therein."

A suit was instituted under the foregoing provision in the Daviess Circuit Court, wherein all persons in being, known and unknown, who had any present or contingent interest in the foregoing tract of property were made parties as either plaintiffs or defendants or proceeded against as unknown defendants, in conformity with KRS 353.330, with the result that the land was placed in trust and Katherine F. Rudy was appointed as trustee to sell, execute and deliver a lease of any or all mineral rights in the property. The latter duly and regularly qualified as trustee, pursuant to KRS 353.350, and the Chancellor then entered a decree dated April 1, 1949.

The decree adjudged, in substance, that an oil and gas lease covering the 335-acre tract "may be sold at private sale"; that Katherine F. Rudy, as trustee, "is now authorized" to make the sale of the lease under the terms and conditions of a standard lease form which the judgment defined, reserving a one-eighth royalty "to herself as trustee"; that no appraisement of the value of the lease should be made; that the lease was to be for a term of two years from the date of the sale or for the duration that the leased premises produced oil and gas or that drilling operations are continued on the land as prescribed in the lease; that the purchaser should commence

E. B. Anderson, John B. Anderson and David C. Brodie, Owensboro, for appellants.

Hubert Meredith, Robert T. Sweeney and Thomas E. Sandidge, Owensboro, W. G. Craig, Henderson, for appellees.

STEWART, Justice.

The sole question presented on this appeal is whether the bid of appellant, James C. Ellis, for the purchase of an oil and gas lease covering 335 acres of land situated in Daviess County was properly rejected.

This is the second appeal of this case, and the factual background of this litigation is fully set forth in the opinion reported in 314 Ky. 524, 236 S.W.2d 466. Consequently, we shall supply only those facts that are essential to shed light on the issues raised here; but, first, a statement of the law applicable to this controversy is required.

drilling a new well on the tract within ninety days from the confirmation of the lease. and continue such drilling with reasonable diligence until "to or through the Waltersburg Sand", unless oil and gas should be found at a lesser depth, or else the lease should be forfeited; and that the trustee should advertise the time and place for sealed bids for the sale of the lease by publishing a notice in three consecutive issues of the Owensboro Messenger, a daily newspaper in Daviess County, immediately prior to the reception of bids and also by posting written notices at the courthouse door and three other public places in the vicinity of the land for fifteen days next preceding the receiving of bids. The judgment finally provided: "Each bidder shall deliver his bid in writing in a sealed envelope to Ben S. McCormick, Clerk of the Daviess Circuit Court at his office on or before 11:00 A.M., on the day said property is advertised for sale. Said bids shall be opened by the said clerk at said time and place in the presence of the said Katherine F. Rudy, Trustee, who shall make written report to the Daviess Circuit Court, and accompany same with a certified check for the amount of the bid. Whereupon the said Trustee shall execute the lease to the successful bidder and submit same together with said certified check to this Court within ten days after date of sale for its approval, modification or rejection."

In all the notices of sale the trustee inserted this condition: "The undersigned reserves the right to reject any and all bids." On May 10, 1951, at 11:00 a. m., the time set by the advertisement for the opening of bids, appellant, Ellis, was the only person who presented an offer. His bid was for $25,000 and it was accompanied by a certified check for this amount. For a period of two weeks, no report was made by the trustee to the court, and, on May 24, 1951, appellant, Ellis, moved the court to require her to file a report. On the next day, she tendered her report and stated therein that she had specifically reserved the right to refuse any and all bids and that after careful deliberation she deemed it to the best interest of the trust estate to reject the bid of Ellis for $25,000. She stated further that following the sale she had received an offer from one C. R. Ozier of Champaign, Illinois, for $30,000 for the purchase of the lease, and that in her opinion the offer of Ozier was the best that had been received by her and it should be accepted. With her report the trustee tendered a proposed oil and gas lease drawn up by her as trustee to Ozier together with, as she says, "a certified check made payable to my order in the sum of $30,000," and she then moved the court to reject the Ellis bid and approve the lease to Ozier.

On June 6, 1951, appellant, Ellis, filed a general demurrer to the trustee's report and, without waiving the same, filed exceptions thereto. On June 13, 1951, Stanley Lambert and his associates filed with the Chancellor what they designated as a declaration in which they alleged that on or before May 18, 1951, they had placed in the hands of an attorney in Owensboro, Kentucky, certified checks considerably in excess of $30,000, and that they had instructed this attorney to offer a bid to the trustee for the lease involved herein but that the bid was never made. They further stated that they wished to purchase the lease in question and that they desired to make a bid which would substantially exceed $30,000. Ellis objected to the filing of this declaration.

All the issues thus presented were heard orally before the Chancellor and, at the conclusion thereof, he adjudged, so far as pertinent here, that the general demurrer and the exceptions of appellant, Ellis, be overruled; that the bids of appellant, Ellis, and of Ozier be rejected and held for naught and that their checks be returned to them; and that the trustee may resell the lease upon the same terms and conditions as set forth in the original order directing the sale, dated April 1, 1949, except that the bidders shall only be required to accompany each bid with a certified check in the amount of $5,000, the balance of the purchase price to be paid by certified check or cash upon confirmation of the sale by the court.

It is contended, first, that the trustee had no right to deviate from the directions given her by the judgment and that she exceeded her authority by advertising that she reserved the right to refuse any and all bids on the lease and, next, that the Chancellor erred in setting aside the bid to appellant, Ellis. No other questions are presented, since Ozier and Lambert and his associates have not cross-appealed. We might also add that only Ellis and Katherine F. Rudy, as trustee, are active participants in this appeal.

KRS 353.360 is in this language: "The trustee shall proceed, conformably to the provisions of such decree, to sell the lease authorized thereby, and after making such sale shall make a report thereof to the court. Upon filing of such report, the court may hear evidence as to whether or not the sale price is reasonable, and, if the court be satisfied with the sale and the amount received therefor, such sale shall be confirmed by the court and the lease executed by the trustee approved by the court on the face thereof."

We think it is unnecessary to discuss the alleged irregularities of the trustee in the sale of the lease, because her acts in this respect, in reality, became merged with those of the Chancellor when the latter passed judgment upon them. The vital question is: Did the Chancellor abuse his discretion in rejecting the bid of appellant, Ellis? The correct decision of this point is determinative of this case.

Appellant, Ellis, takes the position that the action of the trustee in her attempted disposition of the lease under the judgment was in effect a judicial sale. Furthermore, as he was the only bidder at such a sale held by the trustee, he acquired legal rights which are to be as much protected and enforced as are the rights of other purchasers, and that the court erred in not confirming the purported sale of the lease to him. We believe, along with appellant, Ellis, that it is the policy of the law to uphold judicial sales, and we agree that the Chancellor's discretion in confirming or setting aside a judicial sale must not be exercised in an arbitrary manner and that such discretion is controlled by well-established principles of law. See Allen v. Francis, 292 Ky. 412, 166 S.W.2d 877; Melton v. Tipton, 264 Ky. 196, 94 S.W.2d 350.

However, we think appellant, Ellis, overlooks the law and certain material facts that control this case. It will be noted that the trustee's acts are circumscribed by a statutory enactment, KRS 353.300 et seq., designed to govern the peculiar circumstances involved in this suit. Under this law, the trustee becomes a mere agent or instrument of the court, and the applicable provisions do not contemplate that the trustee is empowered to make a completed sale of a lease which would bind the court to its confirmation. The sale is made without an appraisement of the value of the lease. KRS 353.360, which we have quoted above in its entirety, reserves to the Chancellor the right, after the trustee reports the sale to him, to hear evidence as to whether or not the sale price is reasonable, and, *if the court be satisfied with the sale and the amount received therefor,* he shall then confirm it and approve the lease made by the trustee. It is clear from the language of the passage we have repeated from KRS 353.360 that the entire matter of confirmation rests in the discretion of the court and the sale is not to be regarded as consummated until it has been sanctioned and ratified by the court.

Although the point is not raised, we think the Chancellor properly ordered a resale of the lease after he rejected the bid of appellant, Ellis. Each prospective bidder was constructively notified by the terms of the judgment that the Chancellor reserved the right to approve, modify or reject the lease when sold and executed by the trustee, so that no one has been misled. A sale set aside is the same as if there had never been a sale, and a resale of the property affords all an equal opportunity to bid on it again.

Wherefore, the judgment is affirmed.